IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROY RENFRO, et al.,** ) | | |
| **individually and on behalf of** ) | | |
| **others similarly situated,** ) | | |
| ) | | |
| **Plaintiffs,** ) | | CIVIL ACTION |
| ) | | |
| v. ) | | No. 06-2284-KHV |
| ) | | |
| **SPARTAN COMPUTER** ) | | |
| **SERVICES, INC., et al.,** ) | | |
| ) | | |
| **Defendants.** ) | | |
| ) | | |

**MEMORANDUM AND ORDER**

Plaintiffs bring suit against Spartan Computer Services, Inc. ("SCS"), Jack Steenhausen, SCS president, and Terry Connorton, SCS vice president, on behalf of themselves and others similarly situated seeking recovery of unpaid overtime under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. This matter comes before the Court on Plaintiff's Motion For Conditional Collective Action Certification Pursuant To 29 U.S.C. § 216(b) (Doc. #52) filed February 16, 2007. For reasons stated below, the Court sustains the motion.

**Legal Standards**

Under 29 U.S.C. § 216(b), plaintiffs seek conditional certification of a collective action for purposes of providing notice to putative class members. Section 216(b) provides in part that "[a]n action . . . may be maintained against an employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This provision provides the exclusive procedural mechanism for class certification in actions under the FLSA. Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 679 (D. Kan. 2004). Though the FLSA does not define

the phrase "similarly situated," the Tenth Circuit has approved of an ad hoc approach by which the court determines on a case-by-case basis whether the members of the putative class are similarly situated. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, the court engages in a two-step process. First, the court makes an initial "notice stage" determination whether plaintiffs are "similarly situated" which requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan. Id. at 1102 (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)). By this determination, the court decides whether a collective action should be certified for purposes of sending notice of the action to potential class members. Brown, 222 F.R.D. at 679. This initial step creates a lenient standard which typically results in conditional certification of a representative class. Gieseke v. First Horizon Home Loan Corp., 408 F. Supp.2d 1164, 1166 (D. Kan. 2006) (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995)). Under the second step initiated at the close of discovery, the court utilizes a stricter standard of "similarly situated" which requires evaluation of several factors, including: (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Thiessen, 267 F.3d at 1102-03.

**Factual Background**

Plaintiff's first amended complaint is summarized in pertinent part as follows:

SCS installs and maintains restaurant point-of-sale systems such as electronic cash registers, scanners, scales and telephone equipment. Within the last three years, plaintiffs have worked for SCS as field technicians, field engineers, senior field engineers, parts supervisors, field supervisors, installers, senior installers, lead installers or similar workers. Despite their different job titles, all plaintiffs had similar duties related to the installation, maintenance and/or repair of computer hardware and related

equipment. During the past three years, plaintiffs have regularly worked more than 40 hours per week, but SCS has not maintained complete and accurate records which reflect such overtime and plaintiffs have not been compensated for such overtime. SCS maintains a uniform company-wide policy by which it does not pay its employees overtime.

In support of these allegations, plaintiffs provide the declaration of Cristina Cooper, see Declaration Of Cristina Cooper attached as Exhibit 1 to Plaintiffs' Memorandum In Support Of Motion For Conditional Collective Action Certification Pursuant To 29 U.S.C. § 216(b) ("Plaintiffs' Memorandum") (Doc. #53) filed February 16, 2007. That declaration states as follows:[1]

From February of 2002 until February of 2004, Cooper worked as SCS human resources director. Id. ¶ 1. During this time, all field technicians assumed the same basic duties, including maintenance and

---

[1] In deciding the motion for conditional certification at the initial stage, the Court may consider affidavits and declarations in support of plaintiffs' allegations. See Baldozier v. Am. Family Mut. Ins. Co., 375 F. Supp.2d 1089, 1093 (D. Colo. 2005) (motion for initial certification granted based on substantial allegations and plaintiffs' declarations); Brown, 222 F.R.D. at 680 (at notice stage of certification, court looks to substantial allegations and plaintiffs' affidavits).

SCS argues that Cooper's declaration is fatally flawed because it involves conduct which occurred outside the statute of limitations period. Because plaintiffs allege willful violation of the FLSA, see First Amended Complaint (Doc. #71) ¶ 54, the Court applies a three-year statute of limitations, see 29 U.S.C. § 255(a). Plaintiffs filed their complaint on July 11, 2006, so their claim must be premised on defendants' conduct since July 11, 2003 (i.e. three years preceding the date on which plaintiffs filed their complaint). Here, Cooper's tenure as human resources director lasted approximately seven months into the limitations period (i.e. July of 2003 until February of 2004). A reasonable reading of Cooper's declaration indicates that since at least February of 2002, SCS maintained a policy by which it did not pay overtime to field technicians and installers, and that SCS continued that policy through at least February of 2004. Although Cooper's declaration of conduct before July 11, 2003, falls outside of the limitations period and her declaration cannot substantiate any allegation that SCS did not pay overtime after February of 2004, her declaration is competent to substantiate the allegations of unpaid overtime arising in the early part of the limitations period (i.e. July of 2003 until February of 2004).

SCS also argues that Cooper's declaration presents incompetent legal conclusions. After reviewing the declaration, the Court finds nothing improper in its substance. In any event, to the extent that Cooper uses terms defined in the FLSA or speaks to SCS compliance with the FLSA, the Court is confident that it may effectively separate Cooper's proper declarations from those which purely serve as legal conclusions.

repair of point-of-sale systems, as well as system installation and upgrades. Id. ¶¶ 2-3. All installers assumed the same basic duties and were responsible for installation of point-of-sale systems. Id. When Cooper arrived at SCS in February of 2002, SCS had classified field technicians and installers as exempt from overtime pay requirements under the FLSA. Id. ¶ 5. For purposes of overtime compensation, SCS treated field technicians and installers identically, did not keep accurate records of employee hours and resisted Cooper's efforts to bring SCS into compliance with FLSA pay requirements. Id. ¶¶ 6-8. Cooper does not recall SCS ever paying overtime compensation to field technicians or installers. Id. ¶ 11.

In addition to Cooper's declaration, many plaintiffs filed individual declarations in support of their allegations. Their terms of employment cover various portions of the limitations period ranging from July of 2003 to the present. These declarations universally state that SCS did not require maintenance of time records and that each respective declarant worked a substantial amount of uncompensated overtime during his or her employment with SCS. See Declaration Of Robert Alexander ¶¶ 4-5; Declaration Of Alex Arteaga ¶¶ 4-5; Declaration Of Brian Brewer ¶¶ 4-5; Declaration Of Paul Castaneda ¶¶ 4-5; Declaration Of Bradley Cost ¶¶ 4-5; Declaration Of William Fecht, Jr. ¶¶ 4-5; Declaration Of Silvan Frank ¶¶ 4-5; Declaration Of Terry Goins ¶¶ 4-5; Declaration Of Mark Gomez ¶¶ 4-5; Declaration Of Michael Jarvis ¶¶ 3-4; Declaration Of Jorge Martinez ¶¶ 4-5; Declaration Of Ryan McArthur ¶¶ 4-5; Declaration Of Thomas Read ¶¶ 4-5; Declaration Of Roy Renfro ¶¶ 4-5; Declaration Of Ruben Santiago ¶¶ 4-5; Declaration Of Ralph Schoffstall ¶¶ 4-5; Declaration Of Johnny Thornton ¶¶ 4-5; and Declaration Of Jeff Toth ¶¶ 4-5, all attached to Plaintiffs' Memorandum (Doc. #53).

Based on the allegations of the complaint and supporting evidence, plaintiffs seek certification of a collective action under Section 216(b) of the FLSA which includes all field technicians and

installers whom SCS employed from July 11, 2003 to the present.[2]

## Analysis

Plaintiffs argue that the potential class members are similarly situated because they all perform work on point-of-sale systems and pursuant to established company policy, SCS has treated them the same by not requiring maintenance of accurate time records and refusing to pay overtime. Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan. Brown, 222 F.R.D. at 681. Despite some inherent variation in the specific duties of the putative class members in this case, their shared responsibility to maintain point-of-sale systems is sufficient at this stage of the litigation to find that the putative class members are similarly employed.[3] See Pivonka v. Bd. of County Comm'rs of Johnson County, Kan., No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (variations among responsibilities of putative class members not fatal to initial class certification where all individuals share general duties and defendant denied overtime to all). Given the allegations of the complaint and supporting

---

[2] Record evidence reveals that the terms "field technicians" and "installers" may refer to a collection of smaller categories of employees such as field engineers, senior field engineers, senior installers and lead installers. See Declaration Of Cristina Cooper (Doc. #53-2) ¶ 2-3. Based on the allegations of the complaint, the Court presumes that plaintiffs' reference to "all field technicians and installers" is intended to include field technicians, field engineers, senior field engineers, parts supervisors, field supervisors, installers, lead installers and senior installers. See First Amended Complaint (Doc. #71) ¶ 33.

[3] The parties dispute the appropriateness of subclasses if the Court determines that all putative class members do not share similar employment situations. Because the Court concludes that all putative class members share a sufficient level of similarity for purposes of the first stage of the ad hoc analysis, it need not consider the viability of subclasses. The Court also notes that the appropriateness of subclasses would turn on the disparate factual circumstances of arguably unique categories of employees, which is properly considered in the second stage of the ad hoc analysis. See Thiessen, 267 F.3d at 1103 (court considers disparate factual setting of putative class members as factor in second stage analysis).

declarations, which suggest that plaintiffs maintained similar employment positions and did not receive overtime, plaintiffs have satisfied the low threshold required to demonstrate at the notice stage that all putative class members are similarly situated for purposes of conditional collective action certification under Section 216(b) of the FLSA.

Many of defendants' arguments opposing certification are premature at the first step of the ad hoc approach. Inviting the Court to consider additional evidence beyond the allegations of the complaint and supporting declarations, defendants cite Thiessen for the proposition that "[a] district court considering a motion to certify or decertify is entitled to look past the pleadings and examine the evidence produced during discovery." 267 F.3d at 1108. Because Thiessen involved the second stage of the ad hoc approach – where discovery had been completed and the district court had applied a stricter standard of "similarly situated" to find decertification proper, id. at 1106-08 – its holding that a district court may look to evidence produced in discovery is inapposite. Courts have repeatedly held that at the notice stage of certification, a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations.[4] See, e.g., Thiessen, 267 F.3d at 1102 (nothing more than substantial allegations required at notice stage of certification); Baldozier, 375 F. Supp.2d at 1093 (considering allegations and declarations at notice stage); Brown, 222 F.R.D. at 680-

---

[4] Citing judicial economy, defendants argue that the Court should not postpone the inevitable determination that putative class members are not similarly situated and should consider all evidence produced in discovery to this point. Essentially, defendants ask the Court to collapse the first and second steps of the ad hoc certification approach. Courts typically have rejected this idea. See Gieseke, 408 F. Supp.2d at 1166-67 (although parties have engaged in limited discovery, first stage analysis appropriate where record does not include extensive evidence which is representative of what plaintiffs would present given further discovery); Hammond v. Lowe's Home Ctrs., Inc., No. 02-2509-CM, 2005 WL 2122642, at *3 (D. Kan. Sept. 1, 2005) (collapsing first and second stage not tactic approved by any court; would skew burden of proof); Brown, 222 F.R.D. at 680 (until completion of discovery, first stage analysis proper). In light of this authority, the Court is not inclined to apply the heightened second stage certification analysis on the minimal amount of discovery before it.

81 (considering allegations and affidavits at notice stage); Williams v. Sprint/United Mgmt. Co., 222 F.R.D. 483, 485 (D. Kan. 2004) (at notice stage, court analyzes certification under lenient standard looking to substantial allegations and plaintiff's affidavits).

Defendants argue that the putative class members are not similarly situated because SCS "uncontrovertibly treats Field Technicians as non-exempt and pays them overtime compensation," but "treats Senior Field Engineers, Parts Supervisors, and Field Service Supervisors as exempt." Defendant's Memorandum In Opposition To Plaintiffs' Motion For Conditional Collective Action Certification Pursuant To 29 U.S.C. § 216(b) (Doc. #59) at 14. Given plaintiffs' allegations, Cooper's declaration that SCS treated all field technicians and installers as exempt from the overtime pay requirements of the FLSA, and plaintiffs' declarations that they worked substantial hours of uncompensated overtime, this issue is far from settled. Moreover, any disparate employment settings among putative class members is a factor to be considered at the second stage of the ad hoc analysis after completion of discovery. See Thiessen, 267 F.3d at 1103 (listing factors, including disparate employment circumstances, to be considered during second stage analysis of certification).

Defendants argue that collective action certification is inappropriate because plaintiffs have not alleged a violation of the FLSA. Defendants suggest that plaintiffs' claim lacks merit because even if SCS treated its employees as exempt, such conduct does not necessarily constitute a violation of the FLSA. On the motion for conditional certification, however, the Court will not reach the merits of plaintiffs' claim. See Gieseke, 408 F. Supp.2d at 1166. Defendants' argument is more appropriately raised in a motion to dismiss or a motion for summary judgment. See Hammond, 2005 WL 2122642, at *3.

Because plaintiffs have sufficiently alleged that all putative class members are similarly situated under Section 216(b) of the FLSA, certification of a conditional collective action including all field

technicians and installers whom SCS employed from June 20, 2004 to the present is appropriate for purposes of providing notice of the action to all putative members.[5] Under these circumstances, plaintiffs are entitled to specific discovery of the names and addresses of the putative class members. Vaszlavik, 175 F.R.D. at 681-82. Accordingly, **on or before July 20, 2007**, defendants shall provide plaintiffs the names and last known addresses of all persons whom SCS employed as field technicians (including field technicians, field engineers, senior field engineers, parts supervisors and field supervisors) and installers (including installers, lead installers and senior installers) at any time from June 20, 2004 to the present.

**On or before July 5, 2007**, plaintiffs shall submit a proposed notice and consent form to be sent to prospective class members. Defendants may file any objections to the form of such notice within ten days of plaintiffs' proposed notice and consent.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Conditional Collective Action Certification Pursuant To 29 U.S.C. § 216(b) (Doc. #52) filed February 16, 2007 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that **on or before July 20, 2007**, defendants provide plaintiffs the names and last known addresses of all persons whom SCS employed as field technicians (including field technicians, field engineers, senior field engineers, parts supervisors and field supervisors) and

---

[5] As noted above, plaintiffs request conditional certification of a class of individuals who worked at SCS from July 11, 2003 – three years before plaintiffs filed their original complaint – to the present. Under 29 U.S.C. § 256, an opt-in plaintiff is deemed to have commenced his or her claim when he or she files notice of consent to join the collective action. Thus, with regard to individuals who have not yet joined the action, the maximum reach of the limitations period for any willful violation of the FLSA would extend back only three years from the date of this order (i.e. June 20, 2004). See Pivonka, 2005 WL 1799208, at *4 (conditionally certifying representative FLSA action to include similarly situated persons employed within three years before order). Any person who has not worked for SCS within the last three years cannot now opt in because that person's claim for unpaid overtime is time-barred. The Court will not include such persons within the scope of its certification for notice purposes.

installers (including installers, lead installers and senior installers) at any time from June 20, 2004 to the present.

**IT IS FURTHER ORDERED** that **on or before July 5, 2007**, plaintiffs submit a proposed notice and consent form to be sent to prospective class members. Defendants may file any objections to the form of such notice within ten days of plaintiffs' proposed notice and consent.

Dated this 20th day of June, 2007 at Kansas City, Kansas.

                                                    s/ Kathryn H. Vratil
                                                    Kathryn H. Vratil
                                                    United States District Judge